UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| JAMES EDWARD GIST, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:11-cv-00091 |
| v. | ) | Judge Wiseman/Brown |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

To:     The Honorable Thomas Wiseman

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the Commissioner of Social Security denying plaintiff James E. Gist's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles II and XVI of the Social Security Act (Act). Currently pending before the Magistrate Judge is Plaintiff's Motion for Judgment on the Record and the defendant's response. (Docket Entries 15, 19). The Magistrate Judge has also reviewed the administrative record (hereinafter "Tr."). (Docket Entry 11). For the reasons set forth below, the Magistrate Judge hereby **RECOMMENDS** Plaintiff's motion be **DENIED** and this action be **DISMISSED**.

## I. INTRODUCTION

Plaintiff first filed for SSI and DIB on April 22, 2008, with an alleged onset date of January 1, 2002. (Tr. 153, 157). Plaintiff's claims were denied initially on July 21, 2008 (Tr. 67), and upon reconsideration on October 7, 2008 (Tr. 75, 78). Plaintiff later filed a written request for a hearing. (Tr. 81). Before the hearing, Plaintiff amended the onset date from 2002

1

to April 4, 2008. (Tr. 13). On July 9, 2010, the ALJ ruled that the plaintiff was not disabled within the meaning of the Act from January 1, 2002, through July 9, 2010. (Tr. 21).

In the decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 21, 2013.

2. The claimant has not engaged in substantial gainful activity since April 4, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following combination of severe impairments: degenerative disc disease and arthritis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1425, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he cannot climb ladders, ropes, or scaffolds; he cannot crawl; and he can occasionally perform postural activities.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 3, 1958 and was 43 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

The Appeals Council denied Plaintiff's request for review on July 22, 2011. (Tr. 1). This action was filed on August 6, 2011. (Docket Entry 1).

## II. REVIEW OF THE RECORD

Plaintiff was born on February 3, 1958. (Tr. 21). He has a sixth-grade education, and

2

can read at least part of a newspaper. (Tr. 51). He has two children, both of adult age, neither of which live with him. (Tr. 31). Plaintiff is claiming disability based on arthritis and degenerative disc disease with back pain, foot pain, and knee pain. (Docket Entry 16). Prior to his medical conditions, Plaintiff had worked as a cook, kitchen helper, meat cutter, packer, and laborer. (Tr. 50).

   A. Medical Record

In Mid-2003, Plaintiff visited Dr. Joseph Jestus to address a back injury that was interfering with Plaintiff's ability to work. (Tr. 209). Plaintiff underwent surgery to correct the injury, and followed up with Dr. Jestus just over three months later. At the follow-up, Dr. Jestus noted that while Plaintiff was still experiencing some pains associated with the injury, Plaintiff had worked for a month without restrictions and was "much better now than before surgery." Dr. Jestus assigned Plaintiff a 12% permanent partial impairment rating based on a lateral disc herniation and two nerve root decompressions.

In October of 2006, Plaintiff received an examination for lower body arthritic issues. (Tr. 265). Plaintiff was diagnosed with hallux valguses with mild osteoarthritic changes in both feet, and moderate joint effusion in the left knee. (Tr. 265-68). On June 2nd of 2008, Plaintiff was diagnosed with gouty arthritis in his left great toe, where the hallux valgus was described as "mild." (Tr. 275). Plaintiff tested at normal range uric acid levels, and was referred to a rheumatologist.

On June 18, 2008, Dr. Jerry Lee Surber performed a disability evaluation for Plaintiff. (Tr. 288-92). Before the evaluation, Plaintiff complained of pain in his neck, lower back, left foot and right knee. In his evaluation, Dr. Surber noted that Plaintiff "had no limitations

regarding the functional mobility of any of his areas of complaint with exception of decreased voluntary grip strength in his right compared to his left hand." Dr. Surber noted that Plaintiff was "slightly obese" and had a limping antalgic gait. Dr. Surber assessed that Plaintiff would be able to lift or carry at least 10 to 40 pounds, doing up to one-third to one-half of an 8-hour workday. Dr. Surber also assessed that Plaintiff could stand or walk with normal breaks for up to 2 to 4 hours in an 8-hour workday, or sit with normal breaks for up to 6 to 8 hours in an 8-hour workday.

On July 19, 2008, Dr. Michael N. Ryan performed a disability examination on behalf of the government. (Tr. 306-13). Dr. Ryan concluded that Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. While Dr. Ryan concluded Plaintiff was limited to only occasionally climbing ladders, ropes and scaffolds, Dr. Ryan noted no other limitations. In affirming Dr. Ryan's report that October, Dr. Marvin Cohn stated that Plaintiff appeared to be improving. (Tr. 314).

On February 12, 2009, Plaintiff returned to Dr. Jestus. (Tr. 321-22). During this visit, Plaintiff complained of a severe, aching pain that radiated between his lower back and right leg. Plaintiff described the pain as being worst at night, and aggravated by sitting in one position for an extended period. Dr. Jestus diagnosed plaintiff with lumbar region disc disorder and ordered a CT of the lumbar spine.

That April, Dr. Randolph Robertson performed an x-ray myelogram and CT scan of the lumbar spine. (Tr. 316-17). The x-ray showed poor filling of nerve roots at L3-4 on the left and L4-5 on the right. Reading the CT scan, Dr. Robertson found mild disc space narrowing at both

4

L3-4 and L4-5. The doctor concluded that there was a mild diffuse disc bulge and lateral herniation on the left at L3-4. The doctor also noted possible herniation on the right at L4-5, though speculated that the scan might represent scarring. Viewing these results, Dr. Jestus scheduled Plaintiff for surgery on both problem regions, which took place later in April. (Tr. 320-21).

Plaintiff returned to Dr. Jestus for a follow-up visit a month after the surgery. (Tr. 370). During this visit, Plaintiff reported that his symptoms had improved, though some residual leg pain remained. Plaintiff also reported that no new symptoms had developed. Plaintiff returned again that June, confirming that the symptoms had improved. (Tr. 371-73). Dr. Jestus kept Plaintiff off work at these visits, "for now."

On July 28, 2009, Plaintiff reported to Dr. Jestus that his pain had worsened after a fall getting out of a shower. (Tr. 374). In a follow-up that November, Dr. Jestus reported that the leg pain that worsened after the shower fall was "largely gone." (Tr. 391-92). However, Plaintiff reported lower back pain and intermittent numbness down the entire right side of the body, and that the back pain was "[t]here all of the time." Dr. Jestus noted that Plaintiff had been working part-time as a cook, and was able to take frequent rests at his new job. *Id.* Dr. Jestus had provided a work excuse for Plaintiff earlier that month. (Tr. 398). The next January, Dr. Jestus discharged Plaintiff, stating that he would not change Plaintiff's impairment rating or place restrictions on Plaintiff's work. (Tr. 396). Plaintiff had stopped taking pain medication at this point. (Tr. 395).

The previous day that same January, Plaintiff visited Dr. Michael Cox for an examination at the recommendation of Plaintiff's attorney. (Tr. 380-85). Dr. Cox concluded that Plaintiff

5

could occasionally lift 10 pounds, frequently lift up to 5 pounds, stand or walk for at least 2 hours in an 8-hour workday, and sit for less than about 6 hours in an 8-hour workday. The report continued, stating that the pain would "often" interfere with attention and concentration, is likely to produce "good days" and "bad days" with about four bad days per month, and Plaintiff would have to be absent from work about once per month.[1] The report stated that Plaintiff should alternate sitting and standing every 30 minutes to alleviate the pain. It also stated Plaintiff should never climb, balance, kneel, crouch or crawl. This was Plaintiff's only visit to Dr. Cox. (Tr. 49).

On April 4, 2010, Dr. Donita Keown performed another disability assessment of the Plaintiff. (Tr. 399-405). During the examination, Plaintiff complained of difficulty getting out of bed in the morning and bursitis in all joints. In her report, Dr. Keown stated, "It is felt that Mr. Gist did not apply his effort fully" and that Plaintiff "did not appear to be giving his best effort to the examination." Dr. Keown also described Plaintiff as defensive and hostile, answering questions tersely.

In the residual functional capacity (RFC) evaluation, Dr. Keown found Plaintiff capable of occasionally lifting up to 21 to 50 pounds, and occasionally carrying 11 to 20 pounds. The doctor also found Plaintiff could sit for 8 hours total in an 8-hour work day with breaks every two hours, stand for 6 hours in a work day with breaks every hour, and walk for 5 hours in a work day with breaks every 45 minutes. Dr. Keown found Plaintiff could use his hands to reach, handle, finger, and push and pull frequently, and feel continuously. Plaintiff could operate foot

---

[1] While Dr. Cox checked the box marked for four days of absences per month, this is clarified later in the report as four "bad days" per month, with one absence.

controls frequently, continuously balance, occasionally stoop, and occasionally climb stairs and ramps. Dr. Keown found that Plaintiff could never climb ladders or scaffolds, kneel, crouch, or crawl.

Later that April, Plaintiff underwent two drug screens. (Tr. 412-14). In the first drug screen, Plaintiff submitted a sample of water instead of urine. On the re-ordered test, Plaintiff tested positive for cocaine, and was subsequently restricted from taking narcotics. Dr. Keown's report from earlier that month states that Plaintiff had denied any illicit drug use.

B. Hearing Testimony

At the hearing in May of 2010, Plaintiff testified that he lived with his mother and had two children, neither of which lived with him. (Tr. 30-31). Plaintiff stated that the last time he did any work of any kind was 2002 or 2003. (Tr. 32). When asked about the work excuse that Dr. Jestus wrote for Plaintiff in November of 2009, Plaintiff stated that he had no memory of a work excuse or a visit to Dr. Jestus at that time. (Tr. 32-33). When pressed on whether he visited Dr. Jestus that November, Plaintiff stated, "Possibility I might have. Yes." (Tr. 33). Plaintiff also stated that he did not know why Dr. Jestus mentioned a new job in the report. (Tr. 34). Plaintiff's earnings records show consistent income from 2003-2009, peaking in 2007. (Tr. 165).

Plaintiff testified that he got hurt at Sav-A-Lot while working as a meat-cutter, and that his back hurts him constantly. (Tr. 36-37). He stated that it takes him ten to fifteen minutes to get out of bed in the morning. (Tr. 41-42). On a scale of 0-10, Plaintiff described his pain as 8-9 without medication and 4-5 while taking pain medication. (Tr. 43). Plaintiff also stated that he believed that neither of the surgeries helped with the pain. (Tr. 42-43).

7

Plaintiff also testified to other ways his body was impaired. (Tr. 40-49). Plaintiff complained of knots in his right hand and wrist, and pain in his left elbow, foot and knee. (Tr. 41-45). Plaintiff stated he cannot lift much more than 8-10 pounds, and can only walk "10-20-30 minutes." (Tr. 46). He also stated that he starts aching after 10-15 minutes of standing, and 15-20 minutes of sitting in a straight chair. *Id.* Plaintiff stated that he has difficulty cooking, and pain in his hands creates difficulty in holding a skillet. (Tr. 47).

The court's Vocational Expert (VE) stated that if Plaintiff's testimony were assumed true, Plaintiff would be unable to perform any job at all. (Tr. 52). Given a hypothetical RFC of light exertion, no climbing of ladders ropes or scaffolds, no crawling and occasional other postural activities, the VE stated that there were at least 8,100 jobs within Tennessee fitting that description. (Tr. 51). The VE also testified that Plaintiff would be unable to perform his past relevant work, and the skills from the past work were non-transferable. *Id.*

### III. PLAINTIFF'S STATEMENT OF ERRORS

Plaintiff alleges two errors for review, both involving the ALJ's analysis of Plaintiff's RFC. First, that the ALJ erred in rejecting Dr. Cox's report. Second, that the ALJ erred in discounting Plaintiff's claims of pain.

A. <u>Standard of Review</u>

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *See Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, failing to consider the record as a whole undermines the Commissioner's conclusion. *See Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

---

[2] The Listing of Impairments is found at 20 C.F.R., pt. 404, Subpt. P, App. 1.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Even once analysis has reached step five, it remains the burden of the claimant to prove the extent of the disability. *Her,* 203 F.3d at 391. In determining residual functional capacity for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

C. The ALJ Properly Evaluated the Doctors' Assessments

Plaintiff argues that the ALJ erred in rejecting Dr. Cox's evaluation, which described limitations that would have rendered Plaintiff disabled under the statute. Plaintiff disputes the ALJ's assertion that Dr. Cox's assessment is inconsistent with the findings and opinions of the other examiners. Plaintiff also disputes that Dr. Cox's report is overly restrictive and not supported by the overall medical evidence, stating that the ALJ failed to specify how Dr. Cox's assessment conflicts with Plaintiff's testimony.

In evaluating medical opinions, the Commissioner must weigh the following factors: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. 20 C.F.R. § 404.1527(c). If the treating doctor's opinion is well-supported and consistent with the other evidence on the record, the Commissioner awards

that opinion controlling weight. *Id.* Aside from that rule, reviewing courts may not resolve conflicts of evidence or questions of credibility. *Floyd v. Finch*, 441 F.2d 73, 75 (6th Cir. 1971).

Here, the ALJ's decision to discount Dr. Cox's testimony is backed by substantial evidence. First, Dr. Cox's assessment often conflicted with the assessments of the other examining doctors. Second, Dr. Cox's assessment is not supported by the actions of Plaintiff's treating physician. Third, even if Dr. Cox's report was consistent with the other evidence, there was still substantial evidence for the ALJ's RFC evaluation.

Dr. Cox's assessment of Plaintiff's range of motion was inconsistent with the assessments the other doctors. While Dr. Cox opined that Plaintiff could right and left lateral flex only 5 out of 25 degrees in the lumbar spine, Dr. Surber found Plaintiff could flex 20 degrees and Dr. Keown found the uncooperative Plaintiff could flex 10 degrees. (Tr. 290, 385, 401). While Dr. Cox stated that Plaintiff could only rotate the lumbar 85 degrees, both Drs. Keown and Surber found Plaintiff could rotate the full 90 degrees.

In exertional capacity, Dr. Cox's assessment was stricter than the other examining doctors. While Dr. Cox opined that Plaintiff could lift 10 pounds at maximum, Drs. Surber and Keown placed the Plaintiff's capability at 10-40 and 20-50 pounds, respectively. (Tr. 292, 385, 403). Dr. Cox was the only doctor to place Plaintiff's ability to sit at under 6 out of 8 hours in a workday. While Dr. Cox stated Plaintiff could never balance, no other doctor rated Plaintiff's ability to balance under "frequently."

Dr. Cox's strict restrictions are also inconsistent with Dr. Jestus's latest actions as Plaintiff's treating physician. Just a few months before Dr. Cox's report, Dr. Jestus declined to change Plaintiff's 2003 impairment rating or place any restrictions on Plaintiff's work. Dr. Jestus

11

also noted that Plaintiff was off all pain medication. While this does not directly conflict with Dr. Cox's report, it seems unlikely that a treating doctor, upon seeing diminished capability as opined by Dr. Cox, still decided against adjusting the rating or placing restrictions on work.

Even if Dr. Cox's report was consistent with the medical record, substantial evidence would still back the ALJ's RFC finding. Dr. Cox only saw Plaintiff once, and only in a non-treatment capacity. There are conflicts between the reports of all four of the assessing doctors. Since Dr. Cox's report is not owed any special deference, the ALJ's decisions to weigh other doctor's reports more heavily is backed by substantial evidence.

D.  The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff also argues that the ALJ erred in rejecting Plaintiff's reports of disabling pain. Plaintiff stated that the ALJ failed to adequately discuss the judicial test for evaluating assertions of pain.

In evaluating subjective claims of pain, the Secretary must examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition, or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). Even when there is medical evidence of an impairment which could reasonably be expected to produce the alleged symptoms, the ALJ is not required to credit the claimant's testimony. *Jones v. Commissioner*, 336 F.3d 469, 475 (6th Cir. 2003).

If the ALJ rejects claims of pain as incredible, he must clearly state his reasons for doing so. *Id.* at 1036. Once a credibility assessment is properly made, this assessment "must be accorded great weight and deference, particularly since an ALJ is charged with the duty of

observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). An ALJ finding that claims of pain are incredible must be supported by substantial evidence on the record, just like any other factual finding. *Doud v. Commissioner*, 314 F. Supp. 2d. 671, 678 (E.D. Mich. 2003).

Here, the ALJ clearly stated several substantial reasons for an adverse credibility finding against the Plaintiff. Though not required, the ALJ also mentioned the first prong of the *Felisky* test by stating that the objective evidence did not confirm the existence of the degree of pain Plaintiff described. For these reasons, the ALJ's credibility assessment was proper.

First, the ALJ pointed out that Plaintiff claimed that he had not worked since 2003, yet Dr. Jestus mentioned Plaintiff's description of working as a cook in 2009, and provided a work excuse earlier that year. Plaintiff's testimony also conflicted with the earnings report, which showed consistent earnings through 2009.

Second, the ALJ noted that Plaintiff submitted a sample of water instead of urine, then tested positive for cocaine in a screening that same month. Even if drug use is not considered a large factor, the willingness to cheat on such a screening does little to enhance credibility. Plaintiff had denied any illicit drug use to Dr. Jestus earlier that year.

In addition, the ALJ stated that the medical evidence "simply [does] not support the degree of limitation that the claimant alleges." (Tr. 19). The ALJ noted that Plaintiff's arthritis in his joints was described as mild, and Plaintiff was off pain medications. While this alone may not justify an adverse credibility finding, it shows reasoning for why the objective evidence does not support, let alone confirm, the allegations of the severity of the pain. While Plaintiff asserts that the objective evidence shows physical impairments that could reasonably be expected to cause the

type of pain Plaintiff alleges, the ALJ's adverse credibility finding only disputes the intensity, persistence and limiting effects of the pain. (Tr. 19). Plaintiff offers no connection between the objective evidence and those aspects of the pain described by Plaintiff other than Plaintiff's testimony, which the ALJ properly found less than credible. Given that the burden is on the plaintiff to show the severity of a disability, there is substantial evidence that Plaintiff failed to satisfy that burden.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED** and the action be **DISMISSED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 12th day of July, 2012.

/S/ Joe B. Brown
_____
JOE B. BROWN
United States Magistrate Judge